Frank E. Scherkenbach (CA #142549/scherkenbach@fr.com)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, Massachusetts 02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Howard G. Pollack (CA #162897/pollack@fr.com)
Michael R. Headley (CA #230339/headley@fr.com)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| POWER INTEGRATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAIRCHILD SEMICONDUCTOR INTERNATIONAL, INC., a Delaware corporation, FAIRCHILD SEMICONDUCTOR CORPORATION, a Delaware corporation, and FAIRCHILD (TAIWAN) CORPORATION, a Taiwanese corporation,<br><br>Defendants. | Case No. 3:15-cv-4854-MMC<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Power Integrations, Inc. hereby alleges as follows:

## THE PARTIES

1. Power Integrations, Inc. ("Power Integrations") is incorporated under the laws of the state of Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose, California 95138.

2. Upon information and belief, defendant Fairchild Semiconductor International, Inc. is incorporated under the laws of the state of Delaware, with its principal place of business located at 3030 Orchard Parkway, San Jose, CA 95134.

3. Upon information and belief, defendant Fairchild Semiconductor Corporation is incorporated under the laws of the state of Delaware, with its principal place of business located at 3030 Orchard Parkway, San Jose, CA 95134.

4. Upon information and belief, defendant Fairchild (Taiwan) Corporation, formerly known as System General Corporation (hereinafter "SG"), is incorporated under the laws of Taiwan, with its headquarters located at 5F, No. 9, Alley 6, Lane 45 Bao Shing Road, Shin Dian, Taipei, Taiwan. Upon information and belief, SG is a wholly owned subsidiary of Fairchild Semiconductor Corporation.

5. Defendant Fairchild Semiconductor International, Inc., defendant Fairchild Semiconductor Corporation, and defendant SG will hereinafter be collectively referred to as "Defendants."

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, Title 35 U.S.C. § 1 *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants have purposely availed themselves of the privilege of conducting activities within this State and judicial District.

8. Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400 because the Defendants are subject to personal jurisdiction in this judicial District.

**GENERAL ALLEGATIONS**

9. Power Integrations' products include its TOPSwitch®, TinySwitch®, and LinkSwitch® families of power conversion integrated circuit devices, which are used in power supplies for electronic devices such as cellular telephones, LCD monitors, and computers. These products are sold throughout the United States, including California.

10. Defendants manufacture power supply controller integrated circuit devices (*e.g.*, devices intended for use in power conversion applications such as LCD monitor power supplies, off-line power supplies or battery chargers for portable electronics), and directly, and through their affiliates, make, use, import, sell, and offer to sell the same throughout the United States, including California. Defendants also support and encourage others, including their distributors and customers to import, use, offer for sale, and sell throughout the United States, including California, products incorporating Defendants' integrated circuit devices.

**FIRST CAUSE OF ACTION**

**INFRINGEMENT OF U.S. PATENT NO. 6,212,079**

11. The allegations of paragraphs 1-10 are incorporated for this First Cause of Action as though fully set forth herein.

12. Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 6,212,079, entitled "Method and Apparatus for Improving Efficiency in a Switching Regulator at Light Loads" ("the '079 patent"), which was duly and legally issued on April 3, 2001. A true and correct copy of the '079 patent is attached hereto as Exhibit A.

13. Power Integrations practices the inventions described and claimed in its '079 patent, including with its TOPSwitch-GX®, TOPSwitch-HX®, and TOPSwitch-JX® families of products.

14. On June 28, 2004, Power Integrations filed a complaint for patent infringement against SG in this District because SG was infringing several Power Integrations patents, including the '079 patent. Thereafter, Power Integrations filed a similar complaint for patent infringement with the U.S. International Trade Commission ("ITC") in an effort to obtain expedited relief to prevent continued infringement through importation of the infringing products into the United

States. The District Court case was stayed pending the proceedings in the ITC. Though Power Integrations had initially asserted the '079 patent in the ITC, it voluntarily narrowed its assertion of patents and claims in such a way that it proceeded to a hearing on two other patents. The ITC hearing was held before an Administrative Law Judge ("ALJ"), and the ALJ found all remaining asserted claims valid and infringed, and recommended an exclusion order against the infringing SG products. On August 11, 2006, the ITC issued an exclusion order against the infringing SG chips. SG appealed the ITC decision, but the Federal Circuit affirmed the ITC's findings in all respects. Thereafter, with the exclusion order in place, the parties voluntarily agreed to dismiss the District Court case, but their agreement explicitly recognized that Power Integrations could re-file the complaint again.

15. After the findings that SG infringed the patents at issue in the ITC case, Fairchild purchased SG. Prior to its purchase of SG, Fairchild was itself also found to have infringed certain other of Power Integrations' patents, including the '876 patent also asserted in this suit, in a proceeding in the U.S. District Court for the District of Delaware. Like the ITC and the Federal Circuit with regard to the patents at issue in that case, the Delaware Jury and Court both rejected Fairchild's challenges to the validity of the '876 patent and other Power Integrations patents as well.

16. Since the acquisition of SG, SG has operated as a wholly-owned subsidiary of Fairchild, and Defendants have continued to sell SG chips and to introduce new chips based on the SG architecture.

17. During the parties' prior litigation, SG initiated multiple challenges to the validity of the '079 patent via filing two separate requests for *ex parte* reexamination before the USPTO, raising a number of allegations of invalidity. On May 5, 2009, the USPTO issued Reexamination Certificate No. 6,212,079 C1, confirming the patentability of many of the claims of the '079 patent over SG's challenges. A true and correct copy of the '079 Reexamination Certificate is attached hereto as Exhibit B.

18. After the USPTO confirmed the validity of the claims of the '079 patent, Power Integrations contacted Defendants regarding their continued infringement in a letter dated August 10, 2009. Despite the USPTO's confirmation of the validity of the '079 patent, Defendants refused

1    to agree to stop infringing Power Integrations' patents.  As such, Power Integrations filed suit again

2    in this District (Case No. 09-cv-05235- MMC (MEJ)) to address Defendants' continued

3    infringement of the '079 patent and others.  Following a trial in February 2015, a jury in this

4    District found that Defendants infringed claims 31, 34, 38 and 42 of the '079 patent (as well as

5    claims of another patent), induced others to infringe the '079 patent, and rejected all of Defendants'

6    challenges to the validity of the '079 patent.

7        19.    Despite Defendants' notice of Power Integrations' charge of infringement and the

8    prior finding of infringement, Defendants have been and are now continuing to infringe, directly

9    and indirectly, including by directly infringing, inducing infringement, and contributing to the

10   infringement of, at least, claims 31, 34, 38 and 42 of the '079 patent in this District and elsewhere

11   by making, using, selling, offering to sell, and/or importing power supply controller integrated

12   circuit devices, and inducing and contributing to others, including Defendants' distributors and

13   customers, using, selling, offering to sell, and/or importing such devices, including power supply

14   controller integrated circuit devices like the FAN301UL, FAN301HL, FAN501, FAN501A,

15   SMC0517MX, DNP013, DNP015, FAN6602, FAN6604, FAN6605, FAN6747WL, FAN6757,

16   FL663, FL7734, FLS3217, FLS3247, FSL306LR and LTA805 controller chips manufactured by

17   Defendants, including at least all products within the same or similar product families, and all

18   product families having the same or substantially similar infringing functionalities, (but specifically

19   excluding acts of infringement related to previously adjudicated infringing products for which

20   Power Integrations received damages in Case No. 09-cv-05235- MMC (MEJ)), all of which are

21   covered by, at least, claims 31, 34, 38 and 42 of the '079 patent both literally and under the doctrine

22   of equivalents, all to the injury of Power Integrations.

23       20.    Defendants' accused controller chips each contain "green mode" frequency reduction

24   circuitry that is covered by the "control circuit" elements of the '079 patent claims.  Defendants'

25   accused controller chips have no practical use except in combination with a high voltage transistor

26   switch covered by the "power switch" element of the '079 patent claims.  The combination of

27   Defendants' accused controller chips and a high voltage transistor switch meets all elements of the

28   '079 patent claims.  Defendants offer for sale, import into, and/or sell in the United States, complete

power supply devices, including "demonstration boards," that contain an infringing power supply controller chip in combination with a power switch in accordance with the claims of the '079 patent.

21. Defendants have contributed to, and continue to contribute to, infringement by Defendants' distributors and customers by selling the accused controller chips in the United States, with the knowledge that they will be combined into complete power supplies that include a power switch and that are covered by the claims of the '079 patent. Defendants are fully aware that their products contribute to infringement in the United States. Defendants' infringing products are sold in the United States, and it can be inferred that Defendants are aware that the United States is the ultimate destination of many of its infringing products, as found in previous litigation. Defendants also know that the accused products have no substantial non-infringing uses, and in fact, necessarily infringe one or more claims of the '079 patent both literally and under the doctrine of equivalents because of the prior findings of infringement, because the green mode frequency reduction circuitry is enabled by default in Defendants' controller chips and cannot be disabled by customers, and because the controller chips have no practical use except with a power switch in a power converter application.

22. Defendants' intentional actions, including but not limited to, providing the accused power supply controller chips, providing design support and instructions to Defendants' customers, and encouraging them to use the accused power supply controller chips as intended in power converter applications containing power switches, and indemnifying customers against U.S. patent infringement, induce their distributors and customers to directly infringe, and those actions are undertaken with the specific intent that they will, in fact, induce direct infringement and with full knowledge that Defendants' products infringe one or more claims of the '079 patent both literally and under the doctrine of equivalents. Further, Defendants know that the accused products have no substantial non-infringing uses, and in fact, necessarily infringe one or more claims of the '079 patent both literally and under the doctrine of equivalents because of the prior findings of infringement, because the green mode frequency reduction circuitry is enabled by default in Defendants' controller chips and cannot be disabled by customers, and because the controller chips have no practical use except with a power switch in a power converter application. Further,

Defendants know and intend that at least some of the controller chips they sell overseas will be imported into the United States by their customers in complete power supplies covered by the claims of the '079 patent, and know and intend that the controller chips sold directly into the U.S. and through Defendants' U.S. distributors will be used in the U.S. in power converters that include a power switch.

23. Defendants have, and continue to, willfully infringe with full knowledge that there are no objectively reasonable defenses to Power Integrations' infringement claim; this is particularly true given the prior finding of infringement of the '079 patent in this District and the multiple prior rejections of Defendants' validity challenges, including by a jury in this District. Defendants further know that the green mode frequency reduction circuitry in the accused controller chips is the same as or substantially similar to the corresponding circuitry in the controller chips previously found to infringe and that such circuitry was not the result of a good faith effort to design around Power Integrations' '079 patent.

24. Defendants' past and continued acts of infringement have caused irreparable harm to Power Integrations for which money damages are inadequate compensation.

25. Defendants' acts of infringement have been, and continue to be, willful so as to warrant the enhancement of damages awarded as a result of their infringement.  In particular, despite Power Integrations' prior notice of infringement as early as 2004, despite the prior determinations of infringement and validity, despite the '079 patent emerging from reexamination, and despite Power Integrations' renewed notice to Defendants of their continuing infringement, Defendants have failed to stop infringing the '079 patent.

26. Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until Defendants are enjoined from further infringement by this Court.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 6,249,876

27. The allegations of paragraphs 1-10 are incorporated for this Second Cause of Action as though fully set forth herein.

28.     Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 6,249,876, entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power Supply" ("the '876 patent"), which was duly and legally issued on June 19, 2001.  A true and correct copy of the '876 patent is attached hereto as Exhibit C.

29.     Power Integrations practices the inventions described and claimed in its '876 patent, including with many of the TinySwitch® and LinkSwitch® families of products.

30.     On October 20, 2004, Power Integrations filed a complaint for patent infringement against Fairchild in the District of Delaware because Fairchild was infringing several Power Integrations patents, including the '876 patent ("*PI-Fairchild I*").  In that case, Fairchild was found to infringe the '876 patent, the jury rejected Fairchild's validity challenges, and the Federal Circuit affirmed those findings on appeal, noting that Fairchild had a "corporate culture of copying" Power Integrations' patents.

31.     When Fairchild refused to stop infringing the '876 patent, Power Integrations was forced to sue again, bringing another case in the District of Delaware in 2008 ("*PI-Fairchild II*"), in which Fairchild was once again found to infringe and induce infringement of the '876 patent following a jury trial in 2012.

32.     Despite Defendants' notice of Power Integrations' charge of infringement and the prior finding of infringement, Defendants have been and are now continuing to infringe, directly and indirectly, including by inducing infringement, and contributing to the infringement of, at least, claims 1 and 21 of the '876 patent in this District and elsewhere by making, using, selling, offering to sell, and/or importing power supply controller integrated circuit devices and inducing and contributing to others, including Defendants' distributors and customers, using, selling, offering to sell, and/or importing such devices, including power supply controller integrated circuit devices like the FAN301UL, FAN301HL, FAN501, FAN501A, SMC0417, SMC0517MX, DNP015, FAN6602, FAN6604, FAN6605, FAN6747WL, FAN6757, FL663 and LTA805 controller chips manufactured by Defendants, including at least all products within the same or similar product families, and all product families having the same or substantially similar infringing functionalities, all of which are

1  covered by, at least, claims 1 and 21 of the '876 patent both literally and under the doctrine of
2  equivalents, all to the injury of Power Integrations.

3    33. Defendants' accused controller chips each contain "frequency hopping" (also known
4  as "frequency jitter", "frequency jittering", or "frequency modulation") circuitry that is covered by
5  the '876 patent claims.  The frequency hopping circuitry of Defendants' accused controller chips
6  operates by default and cannot be disabled by Defendants' customers.  Defendants make, use, sell,
7  offer for sale in the U.S. and/or import into the U.S. the infringing power supply controller chips
8  that are covered by the claims of the '876 patent.

9    34. Defendants have contributed to, and continue to contribute to, infringement by
10 Defendants' distributors and customers by selling the accused controller chips in the United States
11 with the knowledge that they will be combined into complete power supplies that contain and use a
12 digital frequency jittering circuit that is covered by the claims of the '876 patent.  Further,
13 Defendants know that the accused products have no substantial non-infringing uses, and in fact,
14 necessarily infringe one or more claims of the '876 patent both literally and under the doctrine of
15 equivalents because of the prior findings of infringement, and because the frequency hopping
16 circuitry is enabled by default in Defendants' controller chips and cannot be disabled by customers.

17   35. Defendants' intentional actions, including but not limited to providing the accused
18 power supply controller chips, providing design support and instructions to Defendants' customers,
19 and encouraging them to use the accused power supply controller chips as intended in power
20 converter applications and indemnifying customers against U.S. patent infringement, induce their
21 distributors and customers to directly infringe, and those actions are undertaken with the specific
22 intent that they will, in fact, induce direct infringement and with full knowledge that Defendants'
23 products infringe one or more claims of the '876 patent both literally and under the doctrine of
24 equivalents.  Further, Defendants know that the accused products have no substantial non-infringing
25 uses, and in fact, necessarily infringe one or more claims of the '876 patent both literally and under
26 the doctrine of equivalents because of the prior findings of infringement, and because the frequency
27 hopping circuitry is enabled by default in Defendants' controller chips and cannot be disabled by
28 customers.  Further, Defendants know and intend that at least some of the controller chips they sell

overseas will be imported into the United States by their customers in complete power supplies covered by the claims of the '876 patent, and know and intend that the controller chips sold directly into the U.S. and through Defendants' U.S. distributors will be used in the U.S. in infringing power converters.

36. Defendants have, and continue to, willfully infringe with full knowledge that there are no objectively reasonable defenses to Power Integrations infringement claim; this is particularly true given the prior finding of infringement of the '876 patent in two prior jury trials in the District of Delaware and the multiple prior rejections of Defendants' validity challenges.  In addition, although Defendants have sought reexamination of claim 1 of the '876 patent, the Federal Circuit vacated the PTO's rejection of that claim on August 12, 2015, and reexamination has never been sought for claim 21 of the '876 patent.  Defendants further know that the frequency hopping circuitry in the accused controller chips is the same as or substantially similar to the corresponding circuitry in the controller chips previously found to infringe and that such circuitry was not the result of a good faith effort to design around Power Integrations' '876 patent.

37. Defendants' past and continued acts of infringement have caused irreparable harm to Power Integrations for which money damages are inadequate compensation.

38. Defendants' acts of infringement have been, and continue to be, willful so as to warrant the enhancement of damages awarded as a result of their infringement.  In particular, despite Power Integrations' prior notice of infringement as early as 2004, despite the prior determinations of infringement and validity and the subsequent affirmance of those determinations by the Court of Appeals for the Federal Circuit, Defendants have failed to cease infringement of the '876 patent.

39. Defendants' infringement has caused irreparable injury to Power Integrations and will continue to cause irreparable injury until Defendants are enjoined from further infringement by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

(a) judgment that Defendants infringe the '079 patent;

1       (b)    judgment that Defendants infringe the '876 patent;

2       (c)    a permanent injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and customers, and those in active concert or participation with any of them, from making, using, offering to sell, or selling in the United States or importing into the United States any devices that infringe any claim of the '079 or '876 patents or contributing to or inducing the same by others;

      (d)    judgment against Defendants for money damages owed to Power Integrations for Defendants' infringement of the '079 and '876 patents in an amount to be determined at trial;

      (e)    that such money judgment be trebled as a result of the willful nature of Defendants' infringement;

      (f)    an accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

      (g)    costs and reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285; and

      (h)    such other and further relief as the Court finds just and proper.

A JURY TRIAL IS DEMANDED BY PLAINTIFF.

Dated: February 25, 2016                FISH & RICHARDSON P.C.

By: /s/ Michael R. Headley
     Michael R. Headley

Attorneys for Plaintiff
POWER INTEGRATIONS, INC.